## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Faustino Ojeda Hernandez, *et al*.,

                   Plaintiffs,

v.

Little K's Landscaping, LLC, *et al.*,

                 Defendants.

Civil No. 3:23-CV-00460 (SVN)

February 5, 2024

## RECOMMENDED RULING ON
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (ECF No. 18)

### I.    INTRODUCTION

This is an action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-68 ("CMWA"); Section 31-72 of the Connecticut General Statutes; and Connecticut common law.  The Plaintiffs are twelve individuals who say that they were employed as landscapers by the Defendants, Little K's Landscaping, LLC ("Little K's") and its principal, Karl Kieslich, Jr.  (Am. Compl., ECF No. 22, ¶ 1.)  They allege that the Defendants failed to pay them wages that they had been promised.  (*See generally id.*)  They seek to recover their unpaid wages, along with double damages under the FLSA, double damages under the Connecticut wage statutes, attorney's fees, and costs.  (Memo. In Supp. of Pls.' Mot. For J. on Default, ECF No. 18-1, at 18) ("Pls.' Memo.").

The Defendants failed to appear and plead in response to the Plaintiffs' complaint, and the Clerk of the Court accordingly entered their default pursuant to Fed. R. Civ. P. 55(a).  (ECF No. 13.)  The Plaintiffs then moved for a default judgment against Mr. Kieslich under Rule 55(b).  (ECF No. 18.)  The presiding District Judge, the Honorable Sarala V. Nagala, referred the motion to me, Magistrate Judge Thomas O. Farrish, for a recommended ruling.  (ECF No. 20.)

For the reasons that follow, I recommend that the motion be granted in part and denied in part. My recommendation has four principal elements. First, I recommend that the motion be granted with respect to the wage loss claims of eleven of the twelve Plaintiffs, although I calculate the amounts of those claims slightly differently in a few instances. (*See* discussion, Section III.D.1 *infra*.) Second, the motion should be denied with respect to the wage loss claims of the twelfth Plaintiff, Abimael Perez, because even after allowing for the principle that wage-and-hour plaintiffs can ordinarily prove their losses by "recollection alone," Mr. Perez's claims are insufficiently supported. (*See* discussion, Section III.D.1.h *infra*.) The denial should, however, be without prejudice to resubmission with additional support. Third, I recommend that the eleven Plaintiffs be awarded double damages under the state wage statutes, but not under the FLSA. (*See* discussion, Section III.D.2 *infra*.) Fourth and finally, the Plaintiffs should be awarded their attorney's fees and costs, although not quite in the amount sought. (*See* discussion, Section III.D.3 *infra*.) The specifics of my recommended disposition are set forth in more detail in Sections III and IV below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Plaintiffs' pleadings, and they are deemed admitted for purposes of a motion for default judgment. (*See* discussion, Section III.A *infra*.) The Plaintiffs are twelve individuals named Faustino Ojeda Hernandez, Santiago Leon, David Morales, Miguel Patishtan, Abiel Ventura Ortiz, Lusvin Ortiz, Noel Ventura Ortiz, Abimael Perez, Carlos Perez, Carlos Velasquez Perez, Gerardo Perez Perez, and Jacobo Perez. (Am. Compl., ECF No. 22.) The Defendants hired them as landscapers "at various times between July 2018 and August 2022," promising wages of between $15.00 and $25.00 per hour. (*Id.* ¶¶ 8, 11-22.) In some weeks,

however, the Defendants did not pay them at all.  (*Id.* ¶¶ 11-22.)  The Plaintiffs therefore filed this action, seeking to recover their unpaid minimum wages under the FLSA and the CMWA; the remainder of their unpaid straight time under Section 31-72; and their unpaid overtime under the FLSA and CMWA.  (Compl., ECF No. 1, Counts One-Three.)  They also alleged common law intentional misrepresentation.  (*Id.* Count Four.)

The Plaintiffs describe Little K's as a "limited liability company registered in the State of Connecticut" that has "contracts [to perform] landscaping services, paving, excavation, and/or snow removal for various residential, business, and governmental customers in Connecticut." (Am. Compl., ECF No. 22, ¶¶ 5, 7.)  They describe Mr. Kieslich as "the principal and sole member" of Little K's.  (*Id.* ¶ 6.)  They allege that Little K's was their employer for purposes of the FLSA and CMWA (*id.* ¶ 5), but that Mr. Kieslich also qualified as an employer under both statutes because he had "final decision and ultimate control of the setting and payment of wages to defendant Little K's employees."  (*Id.* ¶ 6.)

The Plaintiffs filed their initial complaint on April 11, 2023 (ECF No. 1), and they served it upon both Defendants on April 17, 2023.  (Return of Service, ECF No. 9; *see also* Order, ECF No. 10 ("Plaintiffs have submitted proof that Defendants were served with the complaint and summons.").  The Defendants failed to appear and plead within the time required by Fed. R. Civ. P. 12(a)(1)(A)(i).  (*Id.*)  The Plaintiffs therefore moved for a default (Mot. for Default Entry, ECF No. 11), and the Clerk of the Court entered both Defendants' default on May 25, 2023.  (ECF No. 13.)  The Plaintiffs then moved for a default judgment against Mr. Kieslich only, Little K's having filed for bankruptcy in the meantime.  (Mot. for Default J., ECF No. 18; *see also* Order, ECF No. 14 (staying case against Little K's on account of its bankruptcy petition).)  The default judgment

motion was supported by an affidavit from each Plaintiff, accompanied in many instances by time cards and handwritten notes.  (ECF Nos. 18-2 through 18-13; ECF No. 19.)

Judge Nagala referred the motion to me (ECF No. 20), and upon reviewing the motion and the pleadings, I observed two principal deficiencies.  First, the Plaintiffs' complaint did not allege that their jobs had enough of a connection to interstate commerce to support a claim under the FLSA, because the landscaping work they described appeared entirely intrastate.  (Order re: Pls.' Mot. For Default J., ECF No. 21, at 3-7.)  This deficiency not only implicated the legal sufficiency of Count One, but also the Court's jurisdiction over the case, because the Plaintiffs had used their FLSA claim to invoke federal question jurisdiction under 28 U.S.C. § 1331.  (*Id.* at 7; *see also* Compl., ECF No. 1, ¶ 2.)  Second, the motion reflected errors in translating the Plaintiffs' time card entries into lost wage claims.  For example, Mr. Leon's time sheet for the week of April 11-17, 2022 documented that he worked 76 hours and 16 minutes (ECF No. 19), but the motion claimed 76.16 hours of wage loss.  (Pls.' Memo., at 4.)  I noted that "[t]here is of course a difference between 76:16 and 76.16, and while the difference is small," similar errors appeared "to have affected the calculations for most if not all of the plaintiffs and, therefore, directly affect[ed] the Court's ability to calculate the damages on the papers."  (Order re: Pls.' Mot. For Default J., ECF No. 21, at 7.)

To address the first deficiency, I directed the Plaintiffs to show cause "why their motion for default judgment should not be denied, and why their case should not be dismissed because they failed to plead a legally sufficient FLSA claim and because there are insufficient reasons to retain jurisdiction over the state law claims."  (*Id.* at 7-8.)  I added that "[i]f, as part of that showing, the plaintiffs wish to file an amended complaint, they may do so."  *(Id.* at 7.)  To address the second

deficiency, I directed the Plaintiffs "to file a supplemental memorandum containing corrected calculations." (*Id.* at 8.)

The Plaintiffs then amended their complaint.[1]  (Am. Compl., ECF No. 22.)  They now allege that Little K's "had, at all relevant times, a gross volume of sales made or business done of not less than $500,000" (*id.* ¶ 7), and they further allege several connections with interstate commerce (*id.* ¶¶ 8-9), as will be discussed in Section III.B below.  They also filed a document entitled "Plaintiffs' Showing of 'Enterprise Coverage' Under the FLSA," which will likewise be discussed below.  (ECF No. 24.)  Finally, they filed a supplemental brief correcting their damage calculations under the wage statutes.[2]  (ECF No. 25.)  They did not request a hearing, but instead chose to present their claims on the strength of their affidavits and, where provided, their time cards and handwritten notes.  The motion for default judgment is therefore ripe for decision.

---

[1]    I cannot tell whether the Plaintiffs served the Amended Complaint on Mr. Kieslich.  (*See* Am. Compl. at 10) (stating that "[n]otice of this filing will be sent . . . by mail to anyone unable to accept electronic filing," but not listing the persons so served).  In this case, however, it does not matter whether the Amended Complaint was served or not.

Rule 5(a)(2) of the Federal Rules of Civil Procedure provides that "[n]o service is required on a party who is in default for failing to appear," unless the document in question is an amended "pleading that asserts a new claim for relief."  Here, Mr. Kieslich was in default for failure to appear at the time of the Plaintiffs' Amended Complaint (*see* ECF Nos. 13, 22), and the amendment contains no new claim for relief.  (*Compare* Compl., ECF No. 1, *with* Am. Compl., ECF No. 22); *see also W. Sur. Co. v. Leo Constr., LLC*, No. 3:12-cv-1190 (CSH), 2013 WL 144097, at *10 (D. Conn. Jan. 11, 2013) (holding that defaulting defendant was not entitled to service of amended complaint where the amended pleading differed from the original only in that "the factual allegations regarding the citizenship of the parties have been filled in or fleshed out to satisfy this Court that it has subject matter jurisdiction").  Thus, the Plaintiffs were not required to serve the Amended Complaint on him.

[2]    The Plaintiffs do not seek judgment on the common law intentional misrepresentation claim in Count Four.  (Mot. for Default J., ECF No. 18.)

III.    DISCUSSION

A.    Governing Legal Standards

When a defendant defaults, his liability is ordinarily deemed resolved and the Court proceeds to the question of damages. As the Second Circuit has explained, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (citing *Greyhound Exhibitgroup*, 973 F.2d at 159). A default is not, however, "considered an admission" of the amount of the plaintiff's damages. *Greyhound Exhibitgroup*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) and Fed. R. Civ. P. 8(d)). Instead, damages are calculated in subsequent proceedings. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro. Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Yet this does not mean that courts should skip over all questions of liability in deciding motions for default judgments. As Judge Haight has observed, "[b]ecause default is only an admission of well-pleaded allegations, it 'is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Trs. of the I.B.E.W. v. Norland Elec., Inc.*, No. 3:11-cv-709 (CSH), 2015 U.S. Dist. LEXIS 193752, at *5 (D. Conn. Feb. 19, 2015) (quoting *Evanauskas v. Strumpf*, No. 3:00-cv-1106 (JCH), 2001 WL 777477, at *1 (D. Conn. June 27, 2001)). "Therefore, before judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default." *Evanauskas*, 2001 WL 777477, at *1 (citing *Au Bon Pain*

6

*Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  Put differently, "[w]hile a default constitutes

an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of

law alleged therein, nor establish the legal sufficiency of any cause of action."  *In re Indus.*

*Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (citing 10A Charles Alan

Wright et al., *Fed. Prac. & Procedure, Civil* § 2688 (3d ed. 1988)); *accord Trs. of the I.B.E.W.*,

2015 U.S. Dist. LEXIS 193752, at *5-6 (citing cases).

    In this case, there are two liability issues that must be addressed before turning to the

question of damages.  First, because the Plaintiffs premised jurisdiction on the federal questions

raised by their FLSA claim (*see* Compl., ECF No. 1, ¶ 2), I will begin by discussing whether they

have cured the deficiencies in their earlier filings and have now stated a legally sufficient claim

for relief under that statute.  (*See* discussion, Section II.B *infra.*)  Second, I will consider whether

they have adequately stated an employer liability claim against Mr. Kieslich under the FLSA and

the two Connecticut statutes.  (*See* discussion, Section II.C *infra.*)  After concluding that the answer

to both questions is "yes," I will then address the Plaintiffs' damage claims.  (*See* discussion,

Section II.D *infra.*)

    **B.    The Applicability of the FLSA**

    To recover under the FLSA, a plaintiff must show that his employment is sufficiently

connected to interstate commerce.  Fundamentally, "[t]he FLSA's minimum wage and overtime

provisions apply to an employee who is: (1) 'engaged in commerce or in the production of goods

for commerce'; or (2) 'employed in an enterprise engaged in commerce or in the production of

goods for commerce."  *Morales v. Gourmet Heaven, Inc.*, No. 3:14-cv-01333 (VLB), 2016 WL

8254353, at *4 (D. Conn. Nov. 29, 2016) (quoting 29 U.S.C. § 207(a)(1)) ("*Gourmet Heaven II*").

"The two categories are commonly referred to as 'individual' and 'enterprise' coverage,

respectively." *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009).  In this case, the Plaintiffs do not claim to meet the "individual" coverage prong, but they say that the requirements of "enterprise" coverage have been met.  (*See generally* ECF No. 24.)

Enterprise coverage applies when a business with more than $500,000.00 in annual sales employs individuals to, among other things, work on goods or materials that have moved in interstate commerce.  Specifically, a business is subject to "enterprise" coverage under the FLSA when it "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees *handling, selling or otherwise working on* goods or materials that have been *moved in or produced for commerce* by any person'; and (ii) has 'annual gross volume of sales made or business done . . . not less than $500,000.'"  *Gourmet Heaven II*, 2016 WL 8254353, at *4 (quoting 29 U.S.C. § 203(s)(1)(A)) (emphasis in original).

"Enterprise coverage has been interpreted broadly by the courts."  *Boekheimer v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000).  For example, "[u]nder an 'enterprise' application, the employee does not himself need to be involved in an activity that affects interstate commerce."  *Id.* (citing, *inter alia*, *Wirtz v. First Nat'l Bank & Tr. Co.*, 365 F.2d 641, 645 (10th Cir. 1966)).  "Rather, if an enterprise meets the gross dollar volume amount, all employees are covered under the Act if some employees are (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) engaged in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."  *Id.* (citing *Radulescu v. Modowan*, 845 F. Supp. 1260, 1262 (N.D. Ill. 1994)).

Courts in the Second Circuit have held that enterprise coverage applies when two or more of a business's employees handle tools or supplies that have moved in commerce.  In *Boekheimer*, for example, the plaintiff was a janitor who "purchased custodial supplies and other equipment

from five out-of-state vendors." *Id.* at 283.  The court held that his employer qualified for enterprise coverage in part because of his "handling of janitorial goods that have moved in commerce." *Id.* at 285.  In *Archie v. Grand Central Partnership*, the court concluded that enterprise coverage applied because the plaintiff sanitation worker "used a number of items – bags, brooms, shovels, pails, scrapers, radios, books and flashlights . . . some of which undoubtedly moved in interstate commerce to New York City."  997 F. Supp. 504, 530-31 (S.D.N.Y. 1998) (internal quotation marks, ellipses, and citation omitted).  Because enterprise coverage is established not only when the employee produces goods for interstate commerce, but also when he handles materials that have moved in commerce, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Id.* at 530 (quoting *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 501-02 (5th Cir. 1975)); *see also Jacobs*, 577 F.3d at 99 n.7 (citing *Archie* with approval, and stating that enterprise coverage under the FLSA "is rarely difficult to establish").

While the Plaintiffs' initial complaint did not clear even this low bar (*see* Order Re: Mot. for Default J., ECF No. 21), their Amended Complaint and accompanying submission now establish the existence of enterprise coverage.  With respect to the interstate commerce prong, the Plaintiffs now state (among other things) that their work involved being "transported in trucks" from one job to the next, and that they used "gasoline-powered riding mowers and . . . shovels, hoes, rakes, and other landscaping equipment."  (Am. Compl., ECF No. 22, ¶ 9.)  Three Plaintiffs provided affidavits stating that the trucks were a Ford and a Peterbilt, and that the mowers were a SCAG and a Wright.  (ECF Nos. 24-3, 24-4, 24-5.)  The Plaintiffs then provided information confirming that none of these items were manufactured in Connecticut (ECF No. 24, at 3), and by extension they have shown that they handled tools and materials that had once moved in interstate

commerce.  And with respect to the gross sales prong, the Plaintiffs now allege what their first complaint had omitted: that "Defendant Little K's Landscaping, LLC, had, at all relevant times, a gross volume of sales made or business done of not less than $500,000."  (Am. Compl., ECF No. 22, ¶ 7.)  That allegation is deemed admitted by the Defendants' default, and virtually identical allegations have repeatedly been held sufficient to satisfy the gross sales element.  *See Wei v. Sichuan Pepper, Inc.*, No. 3:19-cv-525 (JBA) (TOF), 2022 WL 385226, at *6-7 (D. Conn. Jan. 17, 2022), *report and recommendation approved and adopted*, 2022 WL 382019 (D. Conn. Feb. 7, 2022) (citing cases).  In short, the Plaintiffs have established that the FLSA applies, and that the Court has jurisdiction over the case pursuant to 28 U.S.C. § 1331.

## C.    Mr. Kieslich's Liability as an Employer

"To be held liable under the FLSA, a person must be an 'employer,' defined broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Sikiotis v. Vitesse Worldwide Chauffeured Servs., Inc.*, 147 F. Supp. 3d 39, 45 (D. Conn. 2015) (quoting 29 U.S.C. § 203(d)).  "When determining whether an individual or an entity is an 'employer' under the FLSA, courts evaluate the 'economic reality' of the relationship by focusing on 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 45-46 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four factors standing alone is dispositive," because "the 'economic reality test encompasses the totality of the circumstances." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

The Connecticut statutes "employ[] a somewhat different definition of 'employer' than the FLSA." *Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. Mar. 31, 2015).  "The relevant Connecticut

statutes define employer as an individual or legal entity who 'employs any person' or who acts in an employer's interest in relation to employees." *Lin v. W & D Assocs., LLC*, No. 3:14-cv-164 (VAB), 2015 WL 7428528, at *7 (D. Conn. Nov. 20, 2015) (citing Conn. Gen. Stat. §§ 31-58(d), 31-71a(1)) (brackets omitted). "In fleshing out this definition, the Connecticut Supreme Court has declined to adopt the 'economic reality test' that applies to the FLSA." *Id.* (citation and quotation marks omitted). As explained by that court, for purposes of the Connecticut wage and hour laws, the term "employer" "encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech. Ins., Inc.*, 243 Conn. 454, 462 (1997). While the Connecticut definition may be "narrower" than the FLSA's in some respects, *Andrade v. Kwon*, No. 3:08-cv-479 (SRU), 2012 WL 3059616, at *4 (D. Conn. Mar. 26, 2012), it is nevertheless "broadly construed." *Morales v. Cancun Charlie's Rest.*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *6 (D. Conn. Nov. 23, 2010) ("*Cancun Charlie's*").

In this case, the Plaintiffs have sufficiently shown that Mr. Kieslich qualifies as an "employer" under the FLSA. They state that Mr. Kieslich was the person who hired them (Am. Compl., ECF No. 22, ¶ 8); who decided "whether and how much [they] would be paid" (*e.g.,* Aff. of F. Ojeda Hernandez, ECF No. 18-2, ¶ 4); and who "ran the company" by, among other things, giving "orders either directly to workers or to supervisors who then gave orders to workers." (*Id.* ¶ 5.) They have also provided a copy of Little K's bankruptcy filing, which reveals that Mr. Kieslich is the only member of the LLC. (ECF No. 24-1, at 28.) And although they have not provided much information about the company's record-keeping, this is not dispositive, because "[t]he lack of one *Carter* factor is not fatal" to a Plaintiff's claim against an individual defendant. *Fermin v. Las Delicias Peruanas Rest.*, 93 F.3d 19, 36 (E.D.N.Y. 2015). The "economic reality"

established by the Plaintiff's submissions is that Mr. Kieslich "possessed the power to control the workers in question." *Herman*, 172 F.3d at 139.

The Plaintiffs have also sufficiently shown that Mr. Kieslich qualifies as an "employer" under the Connecticut wage statutes. As noted above, an individual qualifies as an employer under those statutes when he is the one who sets hours and pays wages. *Butler*, 243 Conn. at 462. Here, each Plaintiff has provided an affidavit stating that Mr. Kieslich was "*the* person who decided whether and how much [he] would be paid." (ECF Nos. 18-2 through 18-12, ¶ 4) (emphasis added). When an owner of the business has exclusive control over the payment of wages, courts routinely hold that he qualifies as an "employer" under the Connecticut wage and hour laws. *E.g., Cancun Charlie's*, 2010 WL 7865081, at *6 (holding that a co-owner qualified as an employer because, *inter alia*, he "regularly determined how much an employee would be paid and in what manner"); *Andrade*, 2012 WL 3059616, at *4 (holding that plaintiffs pled a legally sufficient employer-liability claim against individual defendants under the CMWA because they alleged that those defendants were "the sole managers" of the business and "had sole authority over plaintiffs' wages"); *see also Modise v. CareOne Health Servs., LLC*, 638 F. Supp. 3d 159, 186 (D. Conn. 2022) (denying summary judgment to an individual defendant who claimed not to qualify as an employer under the CMWA; "[a] reasonable jury reviewing this record could conclude" that he qualified, "particularly given that it is undisputed that [he] was the sole authority to pay Plaintiffs' wages"). In summary, both liability issues can be resolved in the Plaintiff's favor, and the Court can now turn to the question of damages.

### D.    Damages

#### 1.    Unpaid straight time and overtime

Section 31-71b(a)(1) of the Connecticut General Statutes obliges employers to "pay weekly, or once every two weeks, all wages, salary, or other compensation due each employee." If the employer fails to do so, Section 31-72 provides the aggrieved employee with a cause of action. Specifically, that section provides that "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with the law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court." Conn. Gen. Stat. 31-72. Neither statute "embod[ies] substantive standards to determine the amount of wages that are payable[;]" instead, they merely "provide[] penalties in order to deter employers from deferring wage payments once they have accrued." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 393 (2016).

Although Sections 31-71 and 31-72 do not establish substantive standards for the wages that employers must pay, the FLSA and the CMWA do establish a minimum wage. "Section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce." *Santillan*, 822 F. Supp. 2d at 291 (citing 29 U.S.C. § 206(a)(1)(C)). The federal minimum wage has been $7.25 per hour since 2009. *See* 29 U.S.C. § 206(a)(1)(C). The CMWA likewise requires employers to pay a minimum wage, *see Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002) (observing that the CMWA "provides wage . . . guarantees similar to the FLSA"), but Connecticut's minimum is higher. The state minimum

13

wage was $12.00 per hour in 2020, rising to $13.00 on August 1, 2021 and $14.00 on July 1, 2022. Dep't of Labor, *Minimum Wage Info.*, https://www1.ctdol.state.ct.us/lmi/ctminimumwage.asp (last visited Feb. 4, 2024).

The FLSA and the CMWA also require employers to pay time and a half for overtime. Section 207 of the FLSA "specifies that an employer must pay employees who work in excess of forty hours during a workweek for the excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Santillan*, 822 F. Supp. 2d at 291 (quoting 29 U.S.C. § 207(a)(1)). The CMWA's overtime provision is similar. *See* Conn. Gen. Stat. § 31-76c ("No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); *Morales v. Gourmet Heaven, Inc.*, No. 3:14-cv-1333, 2016 WL 6996976, at *6 (D. Conn. Nov. 29, 2016) ("*Gourmet Heaven I*") ("Like the FLSA, the [CMWA] overtime provision requires that employers pay employees one and one-half times the . . . regular rate for any hours over forty hours per week."). Under both statutes, "an employer must pay the employee one and one-half times his regular wage for every hour worked in excess of forty, not just one and one-half times the minimum wage." *Cancun Charlie's*, 2010 WL 7865081, at *7.

In this case, the Plaintiffs claim damages under all three statutes. (Pls.' Memo., at 13) ("There are three aspects to the plaintiffs' claim for unpaid wages."). They begin by observing that, "to the extent that an employer pays an employee less than the applicable Connecticut minimum hourly wage in any week in which he performed work, the employer is liable for the difference between wages calculated at the minimum hourly rate and the sum paid" under the CMWA. (*Id.*) They add that an employee is also "entitled to overtime wages at one and one-half

times his regular hourly rate for any hours in a week of work that exceed forty" under both the FLSA and the CMWA. (*Id.*) Finally, they say that "an employer has an obligation to pay all wages on a weekly basis pursuant to Conn. Gen. Stat. § 31-71b, the violation of which is actionable under Conn. Gen. Stat. § 31-72." (*Id.*) In Faustino Ojeda Hernandez's case, for example, they seek to recover $25.00 under the CMWA and Section 31-72 for each of the first forty hours worked in each unpaid week, and $37.50 under the FLSA and CMWA for each hour over forty. (*Id.* at 3-4.)

The Plaintiffs bear the burden of proving that they were not paid in accordance with these three statutes, but in meeting this burden, the law makes allowances for the practical realities of the employment relationship. As the Supreme Court has explained in the FLSA context, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251 *et seq.* "Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages [and] hours," and courts should likewise note that "employees seldom keep . . . [records of hours worked] themselves," and "even if they do, the records may be and frequently are untrustworthy." *Id.* "Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secure the production of such records' from the employer, who has the duty for their maintenance under" the statute. *Santillan*, 822 F. Supp. 2d at 294 (quoting *Anderson*, 328 U.S. at 687) (brackets omitted). When the defendant fails to produce the records in discovery, thereby frustrating this "easiest" of methods, courts often permit plaintiffs to meet their burden "by relying on recollection alone." *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013) ("An employee's burden to produce 'sufficient evidence' is low and can be met by that employee's 'recollection

15

alone.'"); *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 336 (S.D.N.Y. 2005). And "[i]n the absence of rebuttal by the defendants, or where the employer has defaulted . . . the employees' recollection and estimate of hours worked are presumed to be correct." *Jemine v. Davis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) (citations omitted).

When wage and hour plaintiffs present their claims in a motion for default judgment, the Court must ensure that they have a proper evidentiary basis. "Generally, 'damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding." *Andrade*, 2012 WL 3059616, at *3 (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158). "A court may forgo an evidentiary hearing," however, if it otherwise "'ensures that there is a basis for the damages specified.'" *Id.* (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)) (brackets omitted). It may, for example, "rel[y] upon detailed affidavits and documentary evidence" when the damages are "capable of mathematical calculation." *Tahirou v. New Horizon Enters., LLC*, No. 3:20-cv-281 (SVN) (TOF), 2023 WL 5934589, at *4 (D. Conn. Aug. 3, 2023), *report and recommendation approved and adopted*, slip op. (D. Conn. Sept. 18, 2023).

In this case, each Plaintiff has submitted an affidavit. The twelve affidavits were no doubt drafted by their attorney, and they therefore all follow the same format. (*See* ECF Nos. 18-2 through 18-12 and 19.) In paragraph 1, the Plaintiff states his name and confirms that he is at least eighteen years old. (*E.g.*, ECF No. 18-2, ¶ 1.) In paragraph 2, he identifies himself as a plaintiff in this case. (*Id.* ¶ 3.) In paragraph 3, he states the year(s) in which he was employed by Little K's, and in paragraph 4, he provides facts supporting Mr. Kieslich's employer status. (*Id.* ¶¶ 3-4.) Most importantly for present purposes, in paragraph 5 he states his agreed hourly rate of pay (*e.g., id.* ¶ 5) ("Kieslich told me that I would be paid for my work at the rate of Twenty-Five Dollars

($25.00) an hour."); in paragraph 6 he confirms that he was not paid in some weeks (*id.* ¶ 6); and in paragraph 7 he identifies the weeks in which he was not paid and the number of hours.[3]  (*Id.* ¶ 7.)  Some Plaintiffs attached copies of their time cards to their affidavits (*e.g., id.* at p. 4), while some others attached handwritten notes containing their recollections of hours worked but not compensated.  (*E.g.*, ECF No. 18-6, at p. 4.)  With the exception of Abimael Perez, their proof of damages is no less detailed than in other cases where default judgments have been granted.  *See, e.g., Wei*, 2022 WL 385266, at *4; *Fermin*, 93 F. Supp. 3d at 28 (recommending entry of default judgment based on "individualized affidavit[s] attesting to the time period [each employee] worked for Defendants, the nature of that work, the hours he worked, and the compensation he received").

I have carefully reviewed all the affidavits and the many documents that accompany them.  My review included cross-checking the time cards and handwritten notes against the statements made in the affidavits.  In some instances, the time cards confirm slightly different figures than the affidavits; for example, Faustino Ojeda Hernandez's affidavit claims 74.50 hours for the week of April 18, 2022, but his time card confirms 74 hours and 50 minutes, or 74.83 hours.  (ECF No. 18-1, at 4.)  In instances where the time cards are machine-stamped and not too faint to read, I have used their figures; otherwise, I have used the figures from the affidavits.  Having conducted this review, I recommend that the following Plaintiffs be awarded the following sums.

a.    Faustino Ojeda Hernandez

Faustino Ojeda Hernandez states under oath that his rate of pay was $25.00 per hour.  (ECF No. 18-2, ¶ 5.)  He confirms that in 2022, he was not paid at all for the weeks of April 18-24, September 12-18, and September 19-25.  (*Id.* ¶ 7.)  His time cards reflect that he worked 74.83,

---

[3]        Abimael Perez is an exception, as will be discussed in Section III.D.1.h *infra*.

55.13, and 60.57 hours in those weeks, respectively. (*Id.* at 4; *see also* Pls.' Suppl. Br., ECF No. 25, at 2.) Allowing him $25.00 for each of the first forty hours in those weeks, Conn. Gen. Stat. § 31-71b(a)(1), and $37.50 for each hour over forty, 29 U.S.C. § 207(a)(1), Conn. Gen. Stat. § 31-76c, I conclude that his default judgment should include an award of $5,644.88, calculated as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 4/18/2022 | 4/24/2022 | 74.83 | 40 | $25.00 | $1,000.00 | 34.83 | $37.50 | $1,306.13 | $2,306.13 |
| 9/12/2022 | 9/18/2022 | 55.13 | 40 | $25.00 | $1,000.00 | 15.13 | $37.50 | $567.38 | $1,567.38 |
| 9/19/2022 | 9/25/2022 | 60.57 | 40 | $25.00 | $1,000.00 | 20.57 | $37.50 | $771.38 | $1,771.38 |
| | | | | | | | | | **$5,644.88** |

### b.    Santiago Leon

Santiago Leon likewise states under oath that his rate of pay was $25.00 per hour. (ECF No. 19, ¶ 5.) He confirms that he was not paid for two weeks, and his machine-stamped time cards confirm that he worked 76.27 and 55.38 hours in those weeks. (*Id.* ¶ 7.) I therefore recommend that his default judgment include an award of $3,936.88 for unpaid straight time and overtime, calculated as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 4/11/2022 | 4/17/2022 | 76.27 | 40 | $25.00 | $1,000.00 | 36.27 | $37.50 | $1,360.13 | $2,360.13 |
| 9/12/2022 | 9/18/2022 | 55.38 | 40 | $25.00 | $1,000.00 | 15.38 | $37.50 | $576.75 | $1,576.75 |
| | | | | | | | | | **$3,936.88** |

### c.    David Morales

David Morales states that his hourly rate of pay was $19.00. (ECF No. 18-4, ¶ 5.) He says that he went entirely unpaid "for one week in April 2022" – although he does not say which week,

and the date fields on his time card are too faint to tell. The hours field is legible, however, and it confirms that he worked 68.56 hours that week. In light of his sworn testimony that he was not paid for a week in April 2022, and his testimony and documentary proof of the hours worked within that week, I conclude that his default judgment should include an award of $1,573.96:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 4/xx/2022 | 4/xx/2022 | 68.56 | 40 | $19.00 | $760.00 | 28.56 | $28.50 | $813.96 | $1,573.96 |
| | | | | | | | | | **$1,573.96** |

d.    Miguel Patishtan

Like David Morales, Miguel Patishtan was paid at a rate of $19.00 per hour. (ECF No. 18-5, ¶ 5.) He says that Mr. Kieslich entirely failed to pay him for the weeks of June 7-13, 2020, and May 31-June 5, 2021. (*Id.* ¶ 7.) His machine-stamped time cards reflect him working 84.35 and 53.62 hours in those two weeks. (*Id.* at 4.)

The first of these two weeks raises statute of limitation concerns. Under the FLSA, actions to recover unpaid wages ordinarily "may be commenced" only "within two years after the cause of action accrued." 29 U.S.C. § 255(a); *see also* 29 C.F.R. § 790.21(b) ("[A] cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."). And under the Connecticut wage statutes, "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues." Conn. Gen. Stat. § 52-596. The Plaintiffs did not bring this case until April 2023 (*see* Compl., ECF No. 1), and accordingly any claims for unpaid compensation in 2020 would seem to be time-barred.

Courts in this District have, however, generally concluded that defendants waive statute-of-limitation defenses by defaulting.  As the Second Circuit has observed, "[a] claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the answer to the complaint." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 752 (2d Cir. 1992); *accord Sec. & Exch. Comm'n v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019) (summary order).  Following this principle, Judge Meyer has held that "[t]he statute-of-limitations provisions of the FLSA and the CMWA are affirmative defenses that are forfeited if not timely raised by the defendant." *Bi v. Xia*, No. 3:18-cv-23 (JAM), 2023 WL 4684828, at *8 n.53 (D. Conn. July 21, 2023); *see also Gourmet Heaven I*, 2016 WL 6996976, at *7-8 (holding that defendants waived FLSA and CMWA statute of limitation defenses by "fail[ing] to raise this issue with the Court in any of their answers, objections to motions, or hearings").  In *Wei,* for example, the court permitted the plaintiff "to recover beyond the customary two-year limitation period" because the defaulting defendant "chose not to assert the affirmative defense of statute of limitation."  2022 WL 385226, at *12; *see also Idrovo v. Elegant Nail Salon & Spa, LLC*, No. 3:19-cv-615 (JAM), 2020 WL 13664731, at *2 n.2 (D. Conn. Jan. 10, 2020); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (collecting cases); *but see Wicaksono v. XYZ 48 Corp.*, No. 10-Civ.-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (applying FLSA statute of limitation even though defendant had defaulted).  Because Mr. Kieslich has waived his statute of limitation defense by defaulting, I recommend that Miguel Patishtan's default judgment include wages improperly withheld in 2020 as well as 2021.  I calculate the sum of the two at $3,172.15, as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 6/7/2020 | 6/13/2020 | 84.35 | 40 | $19.00 | $760.00 | 44.35 | $28.50 | $1,263.98 | $2,023.98 |
| 5/31/2021 | 6/5/2021 | 53.62 | 40 | $19.00 | $760.00 | 13.62 | $28.50 | $388.17 | $1,148.17 |
| | | | | | | | | | **$3,172.15** |

e.    Abiel Ventura Ortiz

Abiel Ventura Ortiz states under oath that his rate of pay was $18.00 per hour.  (ECF No. 18-6, ¶ 5.)  He says that in 2021, he "worked for four weeks for which [he] was not paid, totaling about 278.43 hours."  (*Id.* ¶ 7.)  In 2022, Mr. Kieslich "failed to pay [him] for three additional weeks, totaling 144.78 hours."  (*Id.* ¶ 9.)  While his affidavit does not supply a week-by-week breakdown of straight time and overtime hours, he correctly notes that in the four weeks for which he was unpaid in 2021, no more than 160 hours could have been for straight time.  (ECF No. 25, at 4.)  Similarly, in the three weeks for which he was unpaid in 2022, no more than 120 hours could have been for straight time.  (*Id.*)  He therefore seeks 160 straight time and 118.43 overtime hours for 2021, and 120 straight time and 24.78 overtime hours for 2022.[4]  (Pls.' Memo., at 6.)

Unlike many of his fellow Plaintiffs, Mr. Ortiz did not attach copies of his time cards. (ECF No. 18-6.)  He did attach handwritten notes that he kept (*id.* at 4), and he of course swore under oath that his recollections of his unpaid hours are true to the best of his knowledge and belief. (*Id.* ¶ 10.)  Nevertheless, he has documented his claims less thoroughly than most of his peers.  I have considered whether this should bar his recovery.

---

[4]    In the Plaintiff's Supplemental Brief Showing Re-calculation of Damages, Mr. Ortiz recalculates these figures at 289.39 and 145.31, respectively.  (ECF No. 25, at 4.)  He therefore recalculated his total unpaid wages as $9,217.08, a sum that is $153.24 higher than the figure I will reach below.  (*Id.* at 5.)  The 289.39 figure is, however, unsupported by either the affidavit or the accompanying handwritten notes.  (ECF No. 18-6.)  I will use the figures from his affidavit rather than his counsel's calculation.

I conclude that it should not. As noted above, the law recognizes "that it is the employer who has the duty under . . . the Act to keep proper records of wages [and] hours," and that "employees seldom keep . . . [records of hours worked] themselves." *Anderson*, 328 U.S. at 687. Plaintiffs therefore may rely on "recollection alone." *Arasimowicz*, 948 F. Supp. 2d at 224. In *Andrade*, for example, the plaintiffs recovered unpaid wages even though their affidavits were no more detailed than Mr. Ortiz's, at least with respect to their hours worked. 2012 WL 3059616, at *3-5; *see also* Aff. of G. Mastranzo, ECF No. 189-7 in D. Conn. case no. 3:08-cv-479 (SRU) (stating that plaintiff worked "approximately 9.5 hours" each day). Similarly, in *Wei* the plaintiffs' proof was composed of simple affidavits containing their recollections of hours worked. 2022 WL 385226, at *4; *see also* Aff. of Z. Wei, ECF No. 91-1 in D. Conn. case no. 3:19-cv-525 (JBA). While there is an outer limit to these principles (*see* discussion, Section III.D.1.h *infra*), it has not been reached in Mr. Ortiz's case; his claims have sufficient evidentiary support. I therefore recommend that his default judgment include an award of $9,063.84 in unpaid wages, as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 2021 | 2021 | 278.43 | 160 | $18.00 | $2,880.00 | 118.43 | $27.00 | $3,197.61 | $6,077.61 |
| 2022 | 2022 | 144.78 | 120 | $19.00 | $2,280.00 | 24.78 | $28.50 | $706.23 | $2,986.23 |
| | | | | | | | | | **$9,063.84** |

### f.    Lusvin Ortiz

Lusvin Ortiz went to work for Little K's in 2018 at a rate of $22.00 per hour. (ECF No. 18-7, ¶ 5.) In 2021 the company bounced two of his paychecks, one for $1,592.00 and the other for $730.00; he attached copies of the checks to his affidavit. (*Id.* ¶ 6 and p. 4.) In 2022 the defendants did not pay him for three weeks in which he worked 161.00 hours; no more than 120 of these could have been straight time hours. (*Id.* ¶ 8.) The 2022 calculation works out as follows:

| Period Begins | Period Ends | A.<br>Total<br>Hours<br>Worked | B.<br>Straight<br>Time<br>Hours | C.<br>Straight<br>Time<br>Rate | D.<br>Straight<br>Time<br>Shortfall<br>(B x C) | E.<br>Overtime<br>Hours<br>(A - B) | F.<br>Overtime<br>Rate<br>(C x 1.5) | G.<br>Overtime<br>Shortfall<br>(E x F) | H.<br>Total<br>Shortfall<br>(D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 2022 | 2022 | 161.00 | 120 | $22.00 | $2,640.00 | 41.00 | $33.00 | $1,353.00 | $3,993.00 |
| | | | | | | | | | **$3,993.00** |

Adding the 2021 wages that he was due, but did not recover because the checks were returned, I conclude that he should recover $6,315.00.

g.    Noel Ventura Ortiz

Little K's hired Noel Ventura Ortiz in 2021, and Mr. Kieslich told him that he would be paid $20.00 per hour.  (ECF No. 18-8, ¶¶ 3-5.)  Over two weeks in 2021, Mr. Ortiz worked 151.3 hours for which he was not paid at all (*id.* ¶ 7), a figure that is supported by his recollection rather than by time cards.  Correctly noting that no more than eighty of these 151.3 hours could have been straight-time hours, he calculates his total wage loss at $3,745.00.  (Pls.' Suppl. Br., ECF No. 25, at 6.)  I reach a slightly different figure, and recommend that his judgment include $3,739.00 in lost wages:

| Period Begins | Period Ends | A.<br>Total<br>Hours<br>Worked | B.<br>Straight<br>Time<br>Hours | C.<br>Straight<br>Time<br>Rate | D.<br>Straight<br>Time<br>Shortfall<br>(B x C) | E.<br>Overtime<br>Hours<br>(A - B) | F.<br>Overtime<br>Rate<br>(C x 1.5) | G.<br>Overtime<br>Shortfall<br>(E x F) | H.<br>Total<br>Shortfall<br>(D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 2021 | 2021 | 151.30 | 80 | $20.00 | $1,600.00 | 71.30 | $30.00 | $2,139.00 | $3,739.00 |
| | | | | | | | | | **$3,739.00** |

h.    Abimael Perez

Abimael Perez's claim is the least well-documented of the twelve.  In his affidavit, he states that he worked for Little K's from 2018 to 2022 at a rate of $15.00 per hour.  (ECF No. 18-9, ¶¶ 3, 5.)  And he adds that Mr. Kieslich paid him "only half of the wages [he] earned."  (*Id.* ¶ 7.)  But he does not state, or even attempt to estimate, the number of unpaid hours that he worked.  (*Id.*)  Instead, he skips straight to the amount of dollars he claims to be owed:  "I estimate that by the

time he fired me, Kieslich had failed to pay me $6,762.00." (*Id.* ¶ 7.)  His affidavit includes a written statement that he gave in 2022, evidently in connection with a workplace injury, but that statement likewise contains no estimate of hours or any other information with which the Court could check his math.  (*Id.* at 4.)  Like the affidavit itself, the statement simply says that Mr. Kieslich "currently owes" him $6,762.00.  (*Id.*)

While the law does not require much from plaintiffs in Mr. Perez's position, *see Arasimowicz*, 948 F. Supp. 2d at 224, it does require more than an unadorned statement of the total amount of his claim.  Even when the defendant defaults and fails to produce its time records, a wage and hour plaintiff must "produce 'sufficient evidence' to show the hours he worked 'as a matter of just and reasonable inference.'"  *Doo Nam Yang*, 427 F. Supp. 2d at 335 (quoting *Anderson*, 328 U.S. at 687).  This minimal burden is typically met by "[a]n affidavit that sets forth the number of hours worked."  *Maldonado v. La Nueva Rampa, Inc.*, No. 10-Civ.-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (citing cases); *see also Velasquez v. U.S. 1 Farm Market, Inc.*, No. 3:13-cv-634 (CSH), 2013 WL 6195580, at *5 (D. Conn. Nov. 26, 2013).  "Although a plaintiff in a wage-and-hour case may meet his burden of proof by relying on 'recollection alone' in the event of a defendant's default . . . it is not enough to present the Court with a request for an amount of actual damages, without even a stated 'recollection' to support it."  *Mendoza v. Cavallo's of Chelsea, Inc.*, No. 18-cv-11147 (VSB) (DF), 2022 WL 2531343, at *13 (S.D.N.Y. Apr. 12, 2022).  That is the case here; Mr. Perez has presented the Court with an *ipse dixit* statement of what he claims to be owed, unsupported by even an estimated recollection of the number of straight time and overtime hours for which he went unpaid.  I therefore recommend that the Plaintiffs' motion be denied as to him, but the denial should be without prejudice to a renewed motion with more support.

i.    Carlos Perez

Carlos Perez worked for Little K's at a rate of $18.00 per hour.  (ECF No. 18-10, ¶ 5.)  He says under oath that he worked 57.24 hours in the week of September 12-17, 2022, and that the Defendants entirely failed to pay him for that week.  (*Id.* ¶¶ 7-8.)  He also says that he worked 57.37 hours in the following week, and that the Defendant failed to pay him for that week as well. (*Id.*)  He attached copies of his time cards, and although they are too faint to read every entry, the legible entries are consistent with his affidavit testimony.  (*Id.* at p. 4.)  I therefore recommend that his judgment include $2,374.47 in wage loss, calculated as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 9/12/2022 | 9/17/2022 | 57.24 | 40 | $18.00 | $720.00 | 17.24 | $27.00 | $465.48 | $1,185.48 |
| 9/19/2022 | 9/24/2022 | 57.37 | 40 | $18.00 | $720.00 | 17.37 | $27.00 | $468.99 | $1,188.99 |
| | | | | | | | | | **$2,374.47** |

j.    Carlos Velazquez Perez

Little K's hired Carlos Velasquez Perez at a rate of $20.00 per hour.  (ECF No. 18-11, ¶ 5.)  He worked there from June 3, 2021 to September 9, 2021.  (*Id.* ¶ 3.)  His affidavit states that he was not paid for 367 hours' worth of work (*id.* ¶ 6), and he attached a handwritten note to that effect (*id.* at p. 4), but two years after the events he could not recall how many of those hours were straight time and how many were overtime.  (*See id.*; *see also* Pls.' Memo. at 9.)  Acknowledging that he cannot document an overtime claim, he seeks to recover only straight time for his unpaid hours.  I recommend that his judgment include an award of 367 hours' worth of pay at $20.00 per hour, or $7,340.00.

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 2021 | 2021 | 367.00 | 367 | $20.00 | $7,340.00 | 0.00 | $30.00 | $0.00 | $7,340.00 |
| | | | | | | | | | **$7,340.00** |

   k.  Gerardo Perez Perez

Gerardo Perez Perez worked for the Defendants at a rate of $22.00 per hour. (ECF No. 18-12, ¶ 5.) Like Carlos Perez, he states under oath that he was not paid at all for the weeks of September 12-17, 2022 and September 19-24, 2022. (*Id.* ¶ 6.) His machine-stamped time cards reflect that he worked 57.5 and 56.55 hours, respectively, in those two weeks. (*Id.* ¶ 6.) I recommend that his judgment include an award of $2,906.75 in unpaid wages, calculated as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 9/12/2022 | 9/17/2022 | 57.83 | 40 | $22.00 | $880.00 | 17.83 | $33.00 | $588.39 | $1,468.39 |
| 9/19/2022 | 9/24/2022 | 56.92 | 40 | $22.00 | $880.00 | 16.92 | $33.00 | $558.36 | $1,438.36 |
| | | | | | | | | | **$2,906.75** |

   l.  Jacobo Perez

Finally, Jacobo Perez says that he worked for the Defendants at an hourly rate of $18.00. (ECF No. 18-13, ¶ 5.) He states under oath that he received no pay for the weeks of June 7 and September 19, 2022. (*Id.* ¶ 6.) He adds that he worked 57.33 and 54.23 hours in those weeks. (*Id.*) He attached his time cards to his affidavit, and although the copies are faint, the legible portions are consistent with his affidavit. I therefore recommend that his judgment include an award of $2,301.30, as follows:

| Period Begins | Period Ends | A. Total Hours Worked | B. Straight Time Hours | C. Straight Time Rate | D. Straight Time Shortfall (B x C) | E. Overtime Hours (A - B) | F. Overtime Rate (C x 1.5) | G. Overtime Shortfall (E x F) | H. Total Shortfall (D + G) |
|---|---|---|---|---|---|---|---|---|---|
| 6/7/2022 | | 57.50 | 40 | $18.00 | $720.00 | 17.50 | $27.00 | $472.50 | $1,192.50 |
| 9/19/2022 | | 54.40 | 40 | $18.00 | $720.00 | 14.40 | $27.00 | $388.80 | $1,108.80 |
| | | | | | | | | | **$2,301.30** |

### 2.    *Double damages*

The Plaintiffs also seek awards of "liquidated and/or punitive damages." (Pls.' Memo., at 14.) They note that "[t]he federal and state wage and hour statutes at issue here each provide for payment of double damages when an employer fails to pay minimum wages or overtime wages, and/or fails to pay any wages owed." (*Id.* at 14-15.) Arguing that the federal and state statutes serve different purposes, they contend that they can recover double damages under both – effectively, treble damages. (*Id.* at 16.) For example, in the case of Faustino Ojeda Hernandez, they argue that he should recover $16,866.00, composed of $5,622.00 for wages owed under the FLSA, CMWA, and Section 31-72; $5,622.00 in liquidated damages under the FLSA; and $5,622.00 in punitive damages under the Connecticut statutes. (*Id.* at 18.)

The FLSA and the Connecticut wage statutes both contain double damage provisions. *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a); Conn. Gen. Stat. § 31-72; *Fuk Lin Pau v. Jian Le Chen*, No. 3:14-cv-841 (JBA), 2015 WL 6386508, at *9 (D. Conn. Oct. 21, 2015). Specifically, the FLSA provides in Section 216(b) that "[a]ny employer who violates" the Act's overtime provisions "shall be liable to the employee . . . [for] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The CMWA likewise provides that "if any employee is paid by his or her employer less than the . . . overtime wage to which he or she is entitled," "such employee shall recover, in a civil action . . . twice the full amount of such . . . overtime wage less any amount actually paid to such employee by the

employer."  Conn. Gen. Stat. § 31-68(a)(2); *see also* Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . shall recover, in a civil action . . . twice the full amount of such wages.").

Awards of liquidated or double damages are not mandatory under either statute.  Under the FLSA, an employer may avoid such an award if he "shows to the satisfaction of the court that the act or omission giving rise to [the plaintiff's] action was in good faith and he had reasonable grounds for believing that his act or omission was not in violation of" the statute.  29 U.S.C. § 260; *see also Herman*, 172 F.3d at 142.  And the CMWA similarly provides that an employer can escape an award of double damages if "the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law."  Conn. Gen. Stat. § 31-68(a)(2); *see also* Conn. Gen. Stat. § 31-72; *Rodriguez v. Kaiaffa, LLC*, No. X03-HHD-CV-17-6088349-S, 2021 WL 4775624, at *9 (Conn. Super. Ct. Sept. 13, 2021).

If the employer seeks to avoid liquidated or double damages, however, it bears the burden to prove its good faith.  Under the FLSA, "[t]he employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."  *Herman*, 172 F.3d at 142; *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  And under the CMWA, it is likewise the employer "who must prove good faith to avoid double damages."  *Gourmet Heaven I*, 2016 WL 6996976, at *12; *accord Rodriguez*, 2021 WL 4775624, at *9-10.  As one court in this district explained, "[a]n amendment, effective October 1, 2015, to Connecticut General Statutes § 31-72, shifted the burden of proving the requisite good faith belief for the purpose of determining whether

the employer can avoid otherwise mandatory double damages, from the plaintiff to the defendant."
*Morrison v. Ocean State Jobbers, Inc.*, 180 F. Supp. 3d 190, 196 (D. Conn. 2016).

Because it is the employer's burden to prove good faith – not the employee's burden to prove bad faith – courts frequently award liquidated damages when the employer defaults.  In *Tapia*, for example, the court awarded liquidated damages because the employer had not met its burden under 29 U.S.C. § 260 on account of its default.  96 F. Supp. 3d 1, 5 (D. Conn. 2015).  And in *Pena v. Super Economic One Way Supermarket Corp.*, the court observed that since the defaulting "Defendants did not respond to the [plaintiff's] motion, there is no showing of good faith and liquidated damages are appropriate."  No. 1:20-cv-03060 (MKB) (PK), 2021 WL 4755603, at *11 (E.D.N.Y. Sept. 8, 2021); *see also Pavia v. Around the Clock Grocery, Inc.*, No. 03-cv-6465 (ERK), 2005 WL 4655383, at *7 (E.D.N.Y. Nov. 15, 2005) ("Here, the employers have defaulted and thus have presented no evidence to rebut the presumption in favor of an award of double damages.").  In short, the question of whether a plaintiff should recover one set of double damages against a defaulting defendant is usually not a hard one.

The question of whether plaintiffs may recover *two* sets of liquidated damages – one under the FLSA and another under the Connecticut statutes – was once viewed as more difficult.  Courts had "agree[d] that in general, 'a prevailing plaintiff who can justify both federal liquidated damages and state-law damages should be eligible to recover both where they serve fundamentally different purposes.'"  *Fuk Lin Pau*, 2015 WL 6386508, at *10 (citing *Ke v. Saigon Grill*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008)).  But in this district, there had been "less agreement on the question of whether liquidated damages under the FLSA and the CMWA do serve different purposes."  *Id.* (citing *Cancun Charlie's*, 2010 WL 7865081, at *9, and *Andrade*, 2012 WL 3059616, at *6).  Between 2010 and 2015, at least three courts concluded that the FLSA's

liquidated damages provision has a compensatory purpose but the CMWA's has a punitive one, and that plaintiffs should therefore be permitted to recover under both. *E.g., Fuk Lin Pau*, 2015 WL 6386508, at *10; *Cancun Charlie's*, 2010 WL 7865081, at *9; *Tapia*, 96 F. Supp. 3d at 5-6. Yet in *Andrade*, Judge Underhill "reasoned that the provisions serve the same principal aims." 2012 WL 3059616, at *6. In his view, "[b]oth statutes were enacted to deter employers from underpaying workers . . . [a]nd both statutes redress harm caused by the same conduct; the provisions only award liquidated damages for willful violations of the law." *Id.* He therefore held that "[s]ince the FLSA and the CMWA's liquidated damages do not serve fundamentally different purposes, plaintiffs may only recover under one of the statutes." *Id.*

These cases were, however, decided before the Second Circuit's decision in *Rana v. Islam.* In *Rana*, the Court of Appeals considered whether plaintiffs could recover liquidated damages under both the FLSA and the New York Labor Law ("NYLL"). 887 F.3d 118, 122-23 (2d Cir. 2018). The court began by observing that the FLSA provides for liquidated damages equal to the amount of wrongfully withheld wages, unless the employer proves that its wage violation "was in good faith." *Id.* at 122. It then noted that after a pair of amendments in 2009 and 2010, the NYLL likewise provides for liquidated damages equal to "the full amount of any underpayment," and likewise places the burden on the employer to prove good faith if he wished to avoid such an award. *Id.* at 122-23. The court then concluded that "[w]hile the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Id.* at 123 (citation and quotation marks omitted). Observing that "[d]ouble recovery is generally disfavored," and further observing that the amended NYLL "cover[s] the same ground as the FLSA," the court held that the two statutes do "not allow[] duplicative liquidated damages

for the same course of conduct." *Id.* It added that "[g]iven the background presumption disfavoring double recovery . . . if the New York State Legislature intended to provide multiple recoveries, it would have done so expressly." *Id.*

While *Rana* of course did not expressly address the double damage provisions of the Connecticut statutes, there are no "meaningful differences" between them and their FLSA counterpart. Like the FLSA, the CMWA and Section 31-72 provide for liquidated damages in an amount equal to wrongfully withheld wages. Conn. Gen. Stat. § 31-68 ("If any employee is paid by his or her employer less than the minimum fair wage or overtime wage to which he or she is entitled . . . he or she shall recover, in a civil action . . . twice the full amount of such minimum wage or overtime wage"); Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee wages . . . such employee . . . shall recover, in a civil action . . . twice the full amount of such wages"). Like the FLSA, the two Connecticut statutes both place the burden on the employer to prove his good faith if he wishes to avoid an award. Conn. Gen. Stat. § 31-68 (stating that a liquidated damages award may be avoided "if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law"); *see also* Conn. Gen. Stat. § 31-72. And just as the FLSA and the NYLL share a deterrent purpose, *Rana*, 887 F.3d at 123, the Connecticut wage statutes have a deterrent purpose as well. *See Shortt v. New Milford Police Dep't*, 212 Conn. 294, 309 (1989) (describing Conn. Gen. Stat. § 31-72 as "deter[ring] employers from deferring wage payments once they have accrued"); *Andrade*, 2012 WL 3059616, at *6 (holding that the liquidated damages provisions of the FLSA and the Connecticut wage statutes "serve a similar purpose – they deter employers from ignoring wage and hour laws"). Moreover, the federal and state statutes attack the same course of conduct – bad faith violations of wage and hour laws. *Rana*, 887 F.3d at 123 (holding that the FLSA and the

31

NYLL do not allow "duplicative liquidated damages for the same course of conduct"); *Andrade*, 2012 WL 3059616, at *6 (observing that both statutes are directed to "willful violations" of "wage and hour laws").

Additional support for the similarity of the two statutory schemes may be found in the 2015 amendments to Sections 31-68 and 31-72. As noted above, before those amendments a court could decline to award double damages under either statute, even when the employer had not proven its good faith. Conn. Gen. Stat. § 31-68 (2003) (stating that aggrieved employees "*may* recover . . . twice the full amount" of their wage loss); Conn. Gen. Stat. § 31-72 (1990) (same). Since the amendments, however, both statutes now mirror the FLSA in that the employer "shall" pay liquidated damages unless he bears his burden to prove his good faith. 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68; Conn. Gen. Stat. § 31-72. During the legislative debates, the amendments' sponsors sought support from the business community by pointing out that the amended statute would be only a "double damage" provision, in contrast to the treble damage provisions found in the laws of some other states. 2015 Conn. Sen. Proc., at 934 (comments of Sen. Osten) ("The State of Massachusetts mandates triple damages," but the amended Connecticut statute would "provide[] that double damages are awarded automatically unless a judge using their discretion, finds the employer attempted in good faith to comply with said law"); *see also* 2015 Conn. H.R. Proc., at 6211 (comments of Rep. Tercyak) (referring to amended statute as a "double damages" provision). The debates and hearing testimony provide no evident support for the notion that the General Assembly intended the sort of triple recovery that the Plaintiffs seek here.

The Second Circuit has held that wage-and-hour plaintiffs may not recover liquidated damages under both the FLSA and a corresponding state statute when there are "no meaningful differences" between the two, when they attack "the same course of conduct," and when the state

legislature has not "expressly" signaled its intention to provide a double recovery. *Rana*, 887 F.3d at 123. That is the case with the Connecticut wage statutes as well as with the NYLL, and accordingly I conclude that Connecticut wage-and-hour plaintiffs should recover liquidated damages under either the FLSA or the state statutes, but not both. In this case, the Plaintiffs' recovery is higher under the Connecticut statutes.[5] Because plaintiffs are entitled to recover under the statute that provides the best recovery, *Andrade*, 2012 WL 3059616, at *6, I recommend that they be awarded double damages under the Connecticut statutes but not under the FLSA.

### 3. *Attorney's fees*

Under both the FLSA and the Connecticut wage statutes, successful plaintiffs can recover "reasonable" attorney's fees. 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68, 31–72. In the case of the FLSA, an award of reasonable attorney's fees is mandatory. 29 U.S.C. § 216(b) ("The court . . . *shall* . . . allow a reasonable attorney's fee. . . .") (emphasis added); *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 415 & n.5 (1978); *Davis v. Ching Yi Cheng*, No. 16-cv-1354 (ADS) (SIL), 2017 WL 6622545, at *14 (E.D.N.Y. Dec. 28, 2017) ("Section 216(b) makes fees mandatory for prevailing plaintiffs."). The CMWA provides that a successful plaintiff may

---

[5] "The FLSA statute requires payment of minimum wages and overtime wages only . . . therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (citation omitted). This is true "even when an employee works over 40 hours per week" and seeks to recover wage loss "for those hours worked under 40 per week, unless the wages fall below the minimum threshold." *Id.* "This is because the [federal] statutory language simply does not contemplate a claim for wages other than minimum or overtime wages." *Id.* at 201-02.

Using Faustino Ojeda Hernandez as an example of how this principle would apply in this case, under the FLSA he could recover $7.25 per hour for each of the first forty hours in each week, and $37.50 for each hour over forty. But with respect to the first forty hours, he could not recover the gap between the $7.25 federal minimum wage and his $25.00 regular rate. *See id.* By extension, he could not recover liquidated damages on those sums.

recover "such reasonable attorneys' fees as may be allowed by the court." Conn. Gen. Stat. § 31-68(a).

In this case, the Plaintiffs claim $16,200.00 in attorney's fees. (ECF No. 18-1, at 17.) They calculate that sum by multiplying their attorney's $450.00 hourly rate times the thirty-six hours he devoted to the case. (*Id.*) They provided an affidavit from Attorney Goselin stating that, "[a]lthough [his] employment litigation practice primarily involves contingency fees and fee-shifting statutes, the current regular rate [he] charge[s] clients billable on an hourly rate where payment is guaranteed is $450.00 per hour." (ECF No. 18-14, ¶ 9.) Attorney Goselin adds that, based on his experience in the labor and employment field, he knows that the rate for "highly experienced practitioners with recognized ability in complex cases . . . generally ranges from $450.00 to as high as $600.00 per hour." (*Id.* ¶ 11.) With respect to the number of hours worked, the Plaintiffs provided a "time list" detailing each task that Attorney Goselin performed on their behalf, along with the time spent on that task. (*Id.* at 4.)

In the Second Circuit, an analysis of the reasonableness of a fee request begins with a "lodestar" calculation. *Wei*, 2022 WL 385226, at *15 ("As a general matter, the starting point in analyzing whether claimed attorneys' fees are appropriate is the lodestar[.]") (citation omitted). The "lodestar" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). While the Court of Appeals has suggested that the term is outdated, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), it has also held that district courts must calculate the figure. *Ortiz v. City of N.Y.*, 843 F. App'x 355, 358 (2d Cir. 2021) (summary order) ("We have explained that district courts evaluating a request for attorneys' fees must conduct a lodestar analysis, which calculates reasonable attorneys' fees by multiplying the

reasonable hours expended on the action by a reasonable hourly rate, which results in a presumptively reasonable fee.") (internal quotation marks omitted).  I will therefore begin my analysis of the Plaintiffs' fee request by first considering the reasonableness of Attorney Goselin's claimed hourly rate, and then I will consider whether the requested hours are appropriate.

a.    Hourly rate

In assessing the "reasonable hourly rate" component of the lodestar calculation, the Second Circuit has directed district courts to "bear in mind *all* of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of an attorney's fees." *Arbor Hill II*, 522 F.3d at 190 (emphasis in original).  "The reasonable hourly rate is the rate a paying client would be willing to pay," and in determining that rate, district courts should consider (among other things) the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[6]  *Id.*  Courts should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.*  A reasonable, paying client also "presum[ably] . . . would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally."  *Id.*  Accordingly, "[w]hen an attorney's requested hourly rate is higher than the rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate."  *Yuajian Lin v. La Vie en Schezuan*

---

[6]    The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly v. City of N.Y.*, 934 F.3d 222, 228 (2d Cir. 2019).

*Rest. Corp.*, No. 15-cv-09507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

"Courts in the District of Connecticut have generally approved rates of $300 to $400 for partner-level work in FLSA cases." *Aboah v. Fairfield Health Servs., Inc.*, No. 3:20-cv-763 (SVN), 2023 WL 8807362, at *3 (D. Conn. Dec. 20, 2023) (citing, *inter alia*, *Tahirou v. New Horizon Enters., LLC*, No. 3:20-cv-281 (SVN) (TOF), 2022 WL 510044, at *8 (D. Conn. Feb. 21, 2022)). In *Faniel v. PAFY, Inc.*, for example, the court approved an hourly rate of $375.00 for an attorney who "ha[d] nearly thirty years of experience, and ha[d] appeared in nearly 200 employment cases in this district stretching back to the 1990s." No. 3:20-cv-387 (VLB) (TOF), 2022 WL 1212813, at *9 (D. Conn. Feb. 14, 2022), *report and recommendation approved and adopted*, 2022 WL 2287599 (D. Conn. May 4, 2022). In *Wei*, the court likewise authorized $375.00 for an attorney who had "served as attorney of record in 374 wage and hour cases in district courts across the country, including ten in the District of Connecticut." 2022 WL 385226, at *16-17. Just last month, Judge Bolden awarded $400 to the same attorney. *Lliguicota v. Diamond Nail Salon, LLC*, No. 3:19-cv-2017 (VAB), 2024 WL 63219, at *3-4 (D. Conn. Jan. 5, 2024). And late last year, Judge Nagala approved a $400.00 hourly rate for an FLSA defense attorney who "has been practicing law since 1986, has earned significant honors, and has represented domestic home care employers in litigation throughout the country." *Aboah*, 2023 WL 8807362, at *3.

In this case the Plaintiffs seek an hourly rate of $450.00, but the precedents they cite are distinguishable. In *Marcus v. American Contract Bridge League, Inc.*, the court did indeed award Attorney Goselin a $450.00 rate – but that case was litigated in the District of Massachusetts, where rates are generally higher. No. 17-cv-11165 (FDS), 2022 WL 195082, at *3 (D. Mass. Jan.

21, 2022); *see also Sullivan v. Dumont Aircraft Charter, LLC*, __ F. Supp. 3d __, No. 16-cv-10713 (DPW), 2023 WL 6390792, at *14-15 (D. Mass. Sept. 29, 2023) (approving rate of $425.00 for an attorney with less experience than the attorneys in *Faniel* and *Wei*).  Moreover, *Marcus* was a more complex case than this one.  Whereas *Marcus* involved a complicated and hard-fought dispute over whether a bridge club's "tournament directors" were "administrative" employees exempt from the FLSA's overtime requirement, No. 17-cv-11165 (FDS), 2021 WL 1132161, at *15 (D. Mass. Mar. 24, 2021), this case is a relatively simple one that will likely be resolved on a single, unopposed motion, at least as to Mr. Kieslich.  The *Johnson* factors of "time and labor required," "novelty and difficulty of the questions," and "the level of skill required" would therefore support lower rates in this case than in *Marcus*.

The Plaintiffs also cite *Osegueda v. Newtown Colony Diner* (ECF No. 18-14, ¶ 11), but that case likewise fails to support a $450.00 rate.  In *Osegueda* the plaintiff was represented by Attorney Goselin.  (Jt. Mot. for Settlement Approval, *Osegueda v. Newtown Colony Diner*, No. 3:21-cv-1352 (TOF), ECF No. 26, at 5) ("Jt. Mot.").  The parties settled for $37,500.00 (*id.* at 3), and they submitted their agreement for court approval under the rule of *Cheeks v. Freeport Pancake House*, 796 F.3d 199, 206 (2d Cir. 2015).  (Jt. Mot. at 2, 3.)  In explaining the fairness of the various terms of the settlement agreement, Attorney Goselin explained how he calculated his fee:  he started with a $450.00 hourly rate, multiplied it times his 25.6 hours worked, and added his $802.00 in costs to reach a lodestar figure of $12,322.00.  (*Id.* at 4.)  But then he discounted his $12,322.00 fee claim down to $9,750.00, which resulted in an effective hourly rate of $349.53.[7] Thus, it is not accurate to say, as the Plaintiffs say here, that the court's approval of the settlement "was based upon a reasonable hourly rate of $450 per hour."  (ECF No. 18-14, ¶ 10.)

---

[7]        ($9750.00 - $802.00)/25.6 = $349.53.

To be sure, "awards in similar cases" is but one of the twelve *Johnson* factors.  But in this case, consideration of the other factors likewise fails to support a $450.00 rate.  As noted above, the case required little time and labor, presented no especially novel or difficult questions, and required no unusual level of skill to achieve results for the client.  Furthermore, taking the case did not prevent Attorney Goselin from accepting other employment, nor did it require him to work under unusually demanding time limitations.  And while some of the *Johnson* factors favor a healthy award – including "the attorney's customary hourly rate," "whether the fee is fixed or contingent," and "the experience, reputation, and ability of the attorney[]" – I conclude that they suggest an award at the top of the customary District of Connecticut range, rather than $50.00 beyond it.  *See Aboah*, 2023 WL 8807362, at *3 (awarding rate "at the top end of this range," but not beyond, to a highly experienced attorney who had "earned significant honors" and whose customary hourly rate was $460.00).  In short, an hourly rate of $400.00 is reasonable for the work performed in this case.

### b.    Number of hours worked

In performing the second step of the lodestar analysis – the determination of the reasonable number of hours required by the case – courts consider, among other things, the quality of the representation and the complexity of the work.  "In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, and whether the work was complicated or straightforward."  *Yuajian Lin*, 2020 WL 1819941, at *2; *see also Wei*, 2022 WL 385226, at *16.  Stated another way, "[i]n assessing whether the hours worked were reasonable, courts . . . often take into account the straightforward nature of the work performed and the relative simplicity of the issues involved."  *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-

Civ.-3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (citation and brackets omitted). If the hours actually worked by the attorney appear unreasonable when measured against these yardsticks, the court may reduce them to a reasonable level. *See, e.g., Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015). To facilitate the court's analysis, "the fee applicant must support his or her application with contemporaneous time records specifying the date, hours expended, and nature of work performed." *MBC Ventures, LLC v. Miniventures of N.Y., Inc.*, No. 3:20-cv-762 (CSH), 2021 WL 3709808, at *12 (D. Conn. Aug. 20, 2021) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see also N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

In this case, the number of hours worked are both reasonable and adequately documented. The Plaintiffs have provided Attorney Goselin's time records, and those records appear to have been kept contemporaneously and include all the required information. (ECF No. 18-14, at 4.) Moreover, the records reflect a high level of efficiency: Attorney Goselin investigated twelve separate Plaintiffs' wage and hour claims and drafted their complaint in just 12.5 hours, and he prepared twelve separate damage claims with supporting affidavits for submission along with his default judgment motion in only 23.5 hours. (*Id.*) Finally, the Plaintiffs evidently do not seek to recover for Attorney Goselin's work in responding to the show cause order. In sum, thirty-six hours is a reasonable number of hours for the work done in this twelve-Plaintiff case, even if the case is not especially complex.

     c.  Determining the appropriate attorney's fee

Multiplying the reasonable hourly rate of $400.00 times the thirty-six hours yields a fee of $14,400.00. This simple calculation does not necessarily end the analysis, however, because "the product of a reasonable hourly rate and a reasonable number of hours establishes only a

'presumptively reasonable' fee." *Howell v. Yale Univ.*, No. 3:22-cv-1160 (JCH) (TOF), 2023 WL 4564409, at *3 (D. Conn. July 17, 2023). "[I]t is still within the court's discretion to adjust the amount upward or downward based on [] case-specific factors." *Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*, No. 3:10-cv-60 (JBA), 2012 WL 4092515, at *1 (D. Conn. Sept. 17, 2012) (citation and internal quotation marks omitted). Thus, "the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010). In this case, however, the Plaintiffs have not requested an adjustment to the lodestar, and I observe no reason to make one. I therefore recommend that the Plaintiffs' default judgment include an attorney's fee award of $14,400.00.

### 4.    Costs

The Plaintiffs also seek an award of $1,333.00 in costs. (ECF No. 18-14, ¶¶ 14, 15.) Their request is composed of a $402.00 case filing fee, a $131.00 process server fee, and an $800.00 "fee for an interpreter to help interview the [Spanish speaking] plaintiffs and to meet with them to review and affirm their affidavits." (*Id.* ¶ 14.) Each expense item is supported by a receipt (*id.* at 5-7), and the interpreter's receipt reveals that she charged $100.00 an hour for eight hours' worth of work. (*Id.* at 7.)

In addition to the lodestar amount, an award of attorney's fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Under this heading, filing fees are invariably allowed. *See, e.g., Wei*, 2022 WL 385226, at *20. Service-of-process and interpretation fees are also regularly awarded when not unreasonable. *Id.* (awarding process server

fees); *Tacuri v. Nithin Constr. Co.*, No. 14-cv-2908 (CBA) (RER), 2015 WL 790060, at *15 (E.D.N.Y. Feb. 24, 2015) ("[I]nterpretation services are a recoverable cost.") (collecting cases). In this case, the Plaintiffs' requested costs are reasonable, and they should therefore be allowed in full. *See Wei*, 2022 WL 385226, at *20 & n.10 (awarding $232.00 in service-of-process expense after comparing invoice to an invoice in a comparable case); *Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-cv-5625 (RLM), 2022 WL 17718551, at *11 (E.D.N.Y. Dec. 15, 2022) (awarding reimbursement of interpreter's invoice that, as disclosed by Docket No. 35-1, was based on a rate of $150.00 per hour). I therefore recommend that the Plaintiffs' default judgment include an award of costs in the amount of $1,333.00.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the Plaintiffs' Motion for Default Judgment be granted in part and denied in part.   Specifically, I recommend that:

A.      Judgment enter in favor of the Plaintiff Faustino Ojeda Hernandez against Karl Kieslich, Jr. in the amount of $11,289.76, composed of $5,644.88 in unpaid wages and $5,644.88 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

B.      Judgment enter in favor of the Plaintiff Santiago Leon against Karl Kieslich, Jr. in the amount of $7,873.76, composed of $3,936.88 in unpaid wages and $3,936.88 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

C.      Judgment enter in favor of the Plaintiff David Morales against Karl Kieslich, Jr. in the amount of $3,147.92, composed of $1,573.96 in unpaid wages and $1,573.96 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

D.     Judgment enter in favor of the Plaintiff Miguel Patishtan against Karl Kieslich, Jr. in the amount of $6,344.30, composed of $3,172.15 in unpaid wages and $3,172.15 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

E.     Judgment enter in favor of the Plaintiff Abiel Ventura Ortiz against Karl Kieslich, Jr. in the amount of $18,127.68, composed of $9,063.84 in unpaid wages and $9,063.84 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

F.     Judgment enter in favor of the Plaintiff Lusvin Ortiz against Karl Kieslich, Jr. in the amount of $12,630.00, composed of $6,315.00 in unpaid wages and $6,315.00 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

G.     Judgment enter in favor of the Plaintiff Noel Ventura Ortiz against Karl Kieslich, Jr. in the amount of $7,478.00, composed of $3,739.00 in unpaid wages and $3,739.00 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

H.     Judgment enter in favor of the Plaintiff Carlos Perez against Karl Kieslich, Jr. in the amount of $4,748.94, composed of $2,374.47 in unpaid wages and $2,374.47 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

I.     Judgment enter in favor of the Plaintiff Carlos Velasquez Perez against Karl Kieslich, Jr. in the amount of $14,860.00, composed of $7,340.00 in unpaid wages and $7,340.00 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

J.     Judgment enter in favor of the Plaintiff Gerardo Perez Perez against Karl Kieslich, Jr. in the amount of $5,813.50, composed of $2,906.75 in unpaid wages and $2,906.75 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

K.    Judgment enter in favor of the Plaintiff Jacobo Perez against Karl Kieslich, Jr. in the amount of $4,602.60, composed of $2,301.30 in unpaid wages and $2,301.30 pursuant to the double damage provisions of Conn. Gen. Stat. §§ 31-68 and 31-72;

L.    The Plaintiffs' judgment include an award of attorney's fees in the amount of $14,400.00;

M.    The Plaintiffs' judgment include an award of costs in the amount of $1,333.00; and

N.    The motion be denied with respect to the Plaintiff Abimael Perez, but that the denial be without prejudice to a new motion for default judgment accompanied by additional evidentiary support for his unpaid wage claims.

This is a recommended ruling by a magistrate judge.  Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).  If any party wishes to object to this recommendation, it must file that objection with the Clerk of the Court within fourteen days.  Fed. R. Civ. P. 72(b)(2); D. Conn. L. Civ. R. 72.2(a).  If a party does not object within that time, it may not thereafter assign as error any claimed defect in this recommended ruling.  *Id.*  Failure to file a timely objection will also preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

                                        */s/ Thomas O. Farrish*
                                    _____
                                         Hon. Thomas O. Farrish
                                      United States Magistrate Judge